# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 13, 2015

## STATE OF TENNESSEE v. UGENIO RUBY-RUIZ

**Appeal from the Criminal Court for Davidson County**
**No. 2011C2109      Steve R. Dozier, Judge**

_____

**No. M2013-01999-CCA-R3-CD - Filed May 12, 2015**

_____

Defendant, Ugenio Ruby-Ruiz, was indicted by the Davidson County Grand Jury in a 25-count indictment charging him with five counts of soliciting sexual exploitation of a minor; six counts of aggravated sexual battery; ten counts of rape of a child; one count of especially aggravated sexual exploitation of a minor; two counts of rape; and one count of solicitation of a minor. At the request of the State, the trial court dismissed one count of rape of a child; the solicitation of a minor count; and two counts of sexual exploitation of a minor. Defendant was convicted by a jury of the remaining offenses. Following a sentencing hearing, Defendant received a total effective sentence of 121 years. In this appeal as of right, Defendant contends that: 1) the trial court erred in ordering consecutive sentencing; 2) that Defendant's sentence is unjustly deserved in relation to the seriousness of the offenses; and 3) that the evidence was insufficient to support his convictions. Having reviewed the briefs of the parties and the entire record, we conclude that Defendant has waived review of his convictions for sufficiency of the evidence. We further conclude that the trial court did not abuse its discretion in ordering consecutive sentences. Accordingly, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Ivan Lopez-Hernandez, Nashville, Tennessee, (on appeal); Dawn Deaner, District Public Defender; Aimee Solvay and Katie Weiss, Assistant Public Defenders, (at trial), for the appellant, Ugenio Ruby-Ruiz.

Herbert H. Slatery III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Sharon Reddick, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

*Facts*

We will refer to the minor victim in this case by her initials, A.M. She testified that she was 15 years old at the time of trial. Defendant was her stepfather, and she called him "dad." She lived with her mother, her siblings, and Defendant. A.M. testified that Defendant began sexually abusing her when she was eight or nine years old.

A.M. testified that on one occasion, she walked in on Defendant watching pornography on television. She saw Defendant sitting on the couch, and he was masturbating. She testified that Defendant told her to watch it with him, but she went to her bedroom instead. Defendant followed her. She testified that Defendant touched her "private parts" over her clothing. A.M. recalled another incident when she and Defendant were in Defendant's bedroom. She testified, "I guess he just felt like doing it. And like – I guess he just felt like having sex so he told me if I wanted to. And I guess I just didn't want to argue so I just let him." She agreed to have sex with Defendant and unclothed herself. She testified that Defendant penetrated her anally. A.M. specifically remembered the occasion because her mother came home from the grocery store during the incident, and she quickly dressed herself. She testified that Defendant had previously had anal sex with her. She testified that the first time it hurt, and Defendant told her that it would not hurt the next time.

A.M. recalled another incident in the living room when Defendant was watching pornography. She saw "half-naked" girls dressed as clowns touching each other's private parts. She testified that she sat on the couch beside Defendant, and Defendant began touching her private parts over her clothing. She testified that Defendant was touching his penis, and he asked her to touch his penis. Defendant then ejaculated. A.M. testified that Defendant wiped semen off his penis with a paper towel. She testified that Defendant had wiped "sperm" off his penis with a paper towel on several other occasions.

A.M. testified that Defendant also touched her private parts on several occasions in her bedroom, but she did not recall any specific incidents. A.M. recalled that Defendant touched her private parts over her clothing and under her clothing. Defendant would sometimes put his hand under her clothes.

A.M. testified that on occasions when she "would deny him" sex, Defendant would put his penis in her mouth. Defendant also put his mouth on her breasts. A.M. testified that when her family moved to "the yellow house," Defendant was having sexual encounters with her "two times a week." A.M. recalled the first time Defendant tried to have vaginal intercourse with her. She testified that she and Defendant were the only people in the house. A.M. was laying on Defendant's bed. Defendant told her to take her clothes off because "he wanted to stick it in [her] vagina." She told Defendant that it hurt, and Defendant told her that it would only hurt the first time. A.M. testified that she cried. She testified that her mother arrived home, and A.M. ran to the bathroom because she was bleeding. She testified that her mother believed A.M.'s menstrual cycle had started because she was bleeding.

A.M. recalled another occasion Defendant penetrated her vaginally. She testified that she was watching television in Defendant's bedroom while she waited for her mom to return home from work. Defendant told her that he wanted "to do it again[,]" and A.M. refused because her mother would be home soon. A.M. testified, "he told me it was going to be quick. So I just got tired of saying no because I know he wouldn't understand." A.M. removed her clothes and spread her legs open. Defendant tried to put his penis in her vagina, and A.M. told him to stop because it hurt. She testified, "I told him, no, because it did hurt and he did it anyways. I guess he didn't care." She believed that she was in the fifth or sixth grade at that time.

A.M. testified about one incident when they were in the living room. Defendant was sitting on the couch, and A.M. was kneeling on the floor. Defendant put his penis in her mouth and then ejaculated onto a piece of paper. A.M. recalled another incident when she was taking a shower, and Defendant got in the shower with her and "showed [her] his penis." Defendant touched A.M.'s private parts and told her to put her mouth on his penis. Defendant told A.M. that he would give her money if she put her mouth on his penis. A.M. testified that the incident ended when she heard her brother in the house.

A.M. testified that "most often" the sexual encounters would happen in Defendant's bedroom. She testified that it happened "a lot." She recalled another incident when she was in fifth grade, and her friend A.T. was visiting. They were wearing their bathing suits in the bathtub, and Defendant came into the bathroom and exposed his penis to them. A.T. left the bathroom, and Defendant then put his penis in A.M.'s mouth. A.M. testified that on two other occasions when A.T. was visiting, Defendant called them over to watch pornography with him. A.M. testified that she asked A.T. not to tell anyone about the incidents.

A.M. recalled an incident when Defendant's niece was visiting. Defendant gave his niece money to leave the room, and Defendant then told A.M. to put her mouth on his penis. A.M. testified that Defendant was sitting on the couch, and A.M. was kneeling on the floor.

She also recalled an occasion when her mother went to a party, and A.M. "thought the same thing's going to happen that always happens when nobody's around. . . . Have sex with [Defendant]." A.M. testified that Defendant was mostly having vaginal intercourse with her by that time.

A.M. testified that when she was thirteen years old, her youngest sibling was born. A.M. recalled an occasion when she went into Defendant's bedroom to give the baby a bottle, and Defendant told her to give the baby to another sibling. Defendant then told A.M. that he wanted to have sex, and A.M. took her clothes off and laid on Defendant's bed. She testified, "I couldn't say anything because I would be mad because I would get so tired of it. And so I would just let him do it, what he needed to do." She testified that Defendant penetrated her vaginally, and the encounter ended when her sister knocked on the bedroom door. A.M. also recalled an incident just before her youngest sibling was born when Defendant put his penis into her mouth while they were in the living room. She testified that her sister watched the incident.

A.M. testified that Defendant told her that she "shouldn't tell because he would go to jail and what would happen to [A.M.'s] little brothers." Defendant also told A.M. that she was prettier than her mother and that he had sex with A.M. because A.M.'s mother would not have sex with him. Defendant told A.M. that he loved her and he wanted to marry her. Defendant used his cell phone to take photographs of A.M.'s naked body. He also showed A.M. a photograph of her mother's naked body on his phone and told A.M. that her breasts looked better than her mother's breasts. A.M. testified that Defendant also used his phone to take video of her performing oral sex on him, but he did not show the video to A.M. A.M. also testified that Defendant gave her money, a camera, and allowed her to go places in exchange for sexual acts.

In February 2011, A.M. began running away from home. She recalled an incident on a Sunday in March 2011. She was in the eighth grade. After having sex with Defendant, A.M. left the house to go stay with her boyfriend, F.R., with whom she testified she had a consensual sexual relationship. While she was staying with F.R., she told him that Defendant was sexually abusing her. She stayed at F.R.'s house for approximately one week.

The police came to F.R.'s house. A.M. was hiding in a closet when the police arrived. F.R. encouraged A.M. to tell the police about the sexual abuse. A.M. testified that she was afraid of how her mother would react. She testified that she initially lied to the police about having had sex with Defendant because she was embarrassed. She also did not tell police that she had sex with F.R. She testified that she did not tell police that she took her clothes off when Defendant asked to have sex with her because she did not want them to think that

the sexual abuse was her fault. She testified that she "got tired . . . [o]f [Defendant] always wanting to do it and taking off [her] clothes[,]" so she took her clothes off instead.

We will refer to one of A.M.'s friends who testified by her initials also. A.T. testified that she became friends with A.M. in fifth grade. She testified that the first time she went to A.M.'s house, she saw Defendant watching pornography in the living room. She testified that Defendant "just looked [at A.T. and A.M.] and smiled casually." She testified that she saw two people having sex on television. A.T. also testified that on another occasion, she and A.M. were in the bathtub, and they were wearing bathing suits. Defendant got into the bathtub with them. Defendant was wearing underwear. Defendant asked A.M. in Spanish to give him oral sex, and he removed his underwear. A.T. left the bathroom. A.M. told A.T. not to tell anyone about the incident because her mother would not believe her and Defendant would go to jail. On another occasion, Defendant called A.T. and A.M. into his bedroom. Defendant was watching pornography and masturbating under the covers. Defendant asked A.M. to sit with him on the bed, and she agreed. A.T. stopped visiting A.M.'s residence when she was in the sixth grade because her family moved, and she changed schools. She also testified that her mother was not comfortable with Defendant watching her.

F.R. testified that he and A.M. began dating when A.M. was 13 years old. F.R. was 16 years old. He testified that in March 2011, he and A.M. were driving to a friend's house. A.M. was being unusually quiet. F.R. asked A.M. if Defendant had sexually abused her, and A.M. answered affirmatively. A.M. asked F.R. not to tell anyone because she was afraid "her family [wa]s going to fall apart." A.M. stayed at F.R.'s house the following week until police came to his house looking for A.M. F.R. admitted that he had been adjudicated delinquent for theft and aggravated burglary.

Detective Jeff Gibson testified that A.M.'s mother reported her as a runaway in March 2011. Detective Gibson located A.M. at F.R.'s father's house. He found A.M. hiding in a closet. She was crying and "very passionate about not wanting to go home." A.M. disclosed sexual abuse to another officer, and Detective Mayo contacted the sex crimes division. Detective Jason Mayo was assigned to investigate the allegations in this case. Detective Mayo interviewed A.M. Based on his interview of A.M., he arranged for a forensic interview at the Child Advocacy Center. Detective Mayo contacted A.M.'s mother. A.M.'s mother and Defendant arrived at the police station. Detective Mayo then interviewed Defendant. Defendant initially denied that he had touched A.M. or had sex with A.M. Defendant then told Detective Mayo that he had sex with A.M. one time but that A.M. had initiated it. Detective Mayo requested that another officer search Defendant's cell phone. Detective Chad Gish searched Defendant's phone for photos of A.M. and her mother. Detective Gish found a photo of a woman's breasts on Defendant's phone, but he did not find any nude photos of A.M.

Reda Williams, a home healthcare provider, testified that she provided care for Defendant's special needs son. She began working with the family in 2010, and she worked with the family for approximately one year. She testified that she was at the residence four or five days per week from approximately 3:00 p.m. until 9:00 or 11:00 p.m. and on the weekends as needed. Ms. Williams testified that she never saw Defendant watching pornography or behaving inappropriately.

## *Analysis*

### *Sufficiency of the evidence*

Defendant contends that the evidence is insufficient to support his convictions. The State responds that Defendant has waived this issue by failing to cite to the record in the argument section of his brief. Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure requires "citations to the authorities and appropriate references to the record." Otherwise, the issue may be considered waived. *State v. Killebrew*, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988); *see also State v. Schaller*, 975 S.W.2d 313, 318 (Tenn. Crim. App. 1997).

We observe that the statement of facts and argument sections of Defendant's brief provide absolutely no references to the record. We further observe that Defendant's argument is inadequate in other ways as well. Defendant challenges the sufficiency of the convicting evidence for all 20 counts for which he was convicted; however, Defendant does not challenge the sufficiency of the evidence as to any element of any offense for which he was convicted. Defendant's entire argument regarding the sufficiency of the evidence as to his twenty convictions is as follows:

> The count's [sic] of the indictment are alleged to have occurred during the course of eight years. The Defendant was convicted based solely on the victim's testimony. The victim's testimony was never corroborated. Only two of the counts were ever corroborated.

> The first one was when the victim and her friend were in the shower at the victim's house. During this incident the victim's friend did corroborated [sic] in part the victim's testimony. Another count was when the victim and her friend caught the Defendant masturbating in his room.

> Outside of these two counts, there was no other corroborative evidence.

During trial, the victim and members of the Metro/Nashville Police Department testified that the victim had a huge propensity for dishonesty.

The issue of the victim's virginity was at issue. By the time that the victim was examined to determine if she was a virgin, she testified that she had already been sexual active with her boyfriends.

Notwithstanding waiver of the issue, we conclude that the evidence is sufficient to support Defendant's convictions. We note that our supreme court has stated that "it has long been the rule in our state that the uncorroborated testimony of a minor victim may be sufficient to sustain a conviction for forcible or coercive sex offenses such as simple rape." *State v. Collier*, 411 S.W.3d 886, 899 (Tenn. 2013); *see also State v. McKnight*, 900 S.W.2d 36, 48 (Tenn. Crim. App. 1994) (holding that corroboration of minor victims' testimony not necessary to support a conviction for rape), *abrogated on other grounds by State v. Williams*, 977 S.W.2d 101 (Tenn. 1998); *Montgomery v. State*, 556 S.W.2d 559, 560 (Tenn. Crim. App. 1977) (stating that rape statute does not require that testimony of minor female victim be corroborated to support a conviction of rape).

We agree with the State, however, that Defendant has waived this issue. Rule 10 of the Rules of the Court of Criminal Appeals of Tennessee addresses inadequate briefs. It states, in relevant part, "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b). Defendant is not entitled to relief on this issue.

*Sentencing*

Defendant challenges the trial court's imposition of consecutive sentencing and the trial court's application of one enhancement factor. Defendant asserts the total effective sentence is unjustly deserved in relation to the seriousness of the offenses. The State again argues that Defendant has waived review of the issue due to his inadequate brief. Notwithstanding waiver, however, we conclude that the trial court did not abuse its discretion in sentencing Defendant.

When a defendant challenges the manner of service of sentences, including consecutive sentencing, the appellate court reviews the trial court's decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013). Our supreme court in *Pollard* held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing determinations . . . if [the trial court] has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)[.]" *Id*.

at 859-62. Tennessee Code Annotated section 40-35-115(b)(5) allows for consecutive sentencing once a defendant has been convicted of two or more "statutory offenses involving sexual abuse of a minor" and the trial court has considered several "aggravating circumstances arising from the relationship between the defendant and victim, the time span of the defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim."

The presumption of reasonableness standard applies to "within-range sentencing decisions that reflect a proper application of the purposes and principles of the Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). Among the purposes and principles of sentencing is that the imposition of consecutive sentences must be "justly deserved in relation to the seriousness of the offense." T.C.A. § 40-35-102(1). The length of the resulting consecutive sentence must "be no greater than that deserved for the offense committed." T.C.A. § 40-35-103(2).

In sentencing a defendant, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in T.C.A. §§ 40-35-113 and 40-35-114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant wishes to make on his own behalf about sentencing. *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (quoting T.C.A. § 40-35-210(b) (2006)). It is also "critical" that a trial court place on the record the enhancement or mitigating factors that the court considered, if any, as well as the court's reasoning for the sentence, in order to ensure fair and consistent sentencing. *Bise*, 380 S.W.3d at 708.

In a written Sentencing Order, the trial court considered the facts and circumstances of Defendant's criminal conduct. The court found as follows:

> In this case, the Court finds that the sexual activity occurred in multiple homes over a period of at least five years when the victim was between the ages of eight and thirteen. The only way the Court knows to sufficiently describe the abuse is to list the acts: multiple acts of anal intercourse; penile/vaginal penetration; digital/vaginal penetration; fellatio; sexual battery under the clothing and over the clothing; emission of semen; vaginal bleeding; and kissing the victim on the mouth. The defendant also photographed the victim in a sexual manner and exposed her to pornographic material, and he even showed the victim sexual photographs

of her mother. The victim testified that she finally told because she was "tired of it." The Court further finds that what abuse the defendant did admit during interviews with police, he blamed on the victim for any sexual conduct.

The trial court also noted that the victim referred to Defendant as "dad," and Defendant "use[d] his daughter for his sexual pleasure." The court noted the residual effects of Defendant's abuse of the victim, finding that "as a result of defendant's actions, the victim did suffer and continues to suffer from mental health problems. The abuse led to the separation of her family, and she stated in her impact statement that 'he changed my childhood.'"

The trial court found one applicable enhancement factor, that Defendant had abused a position of private trust. T.C.A. § 40-35-114(14). The court found no applicable mitigating factors. The trial court imposed the following sentences:

| Count 1: | [Soliciting] Sexual Exploitation of a Minor | 5 years |
|---|---|---|
| Count 2: | Aggravated Sexual Battery | 10 years |
| Count 3: | Aggravated Sexual Battery | 10 years |
| Count 4: | Rape of a Child | 25 years |
| Count 5: | [Soliciting] Sexual Exploitation of a Minor | 5 years |
| Count 6: | Rape of a Child | 25 years |
| Count 7: | Rape of a Child | 25 years |
| Count 8: | Rape of a Child | 25 years |
| Count 9: | Rape of a Child | 25 years |
| Count 10: | Rape of a Child | 25 years |
| Count 11: | Rape of a Child | 25 years |
| Count 12: | Rape of a Child | 25 years |
| Count 13: | Aggravated Sexual Battery | 10 years |
| Count 14: | Rape of a Child | 25 years |
| Count 16: | Aggravated Sexual Battery | 10 years |
| Count 17: | Aggravated Sexual Battery | 11 years |
| Count 18: | Especially Aggravated Sexual Exploitation of a Minor | 11 years |
| Count 19: | [Soliciting] Sexual Exploitation of a Minor | 5 years |
| Count 20: | Rape | 11 years |
| Count 21: | Rape | 11 years |

The trial court found that consecutive sentencing was necessary to avoid depreciating the seriousness of the offense and to protect the victim and the community as a whole. The

court further found that consecutive sentencing was reasonably related to the severity of the offenses "and the horrendous type of offenses committed against this minor child." The trial court ordered that Defendant's sentences in counts three, four, eight, nine, fourteen, and twenty-one be served consecutively to each other, and all other counts run concurrently, for a total effective sentence of 121 years.

On appeal, Defendant asserts that there was no proof to support the trial court's finding that Defendant was in a position of trust. Defendant argues, "no proof was ever put on that the Defendant was entrusted with the care of the victim." Defendant also asserts that there was no proof to support the trial court's finding that the family was separated as a result of Defendant's actions. Finally, Defendant asserts that the trial court should have applied as a mitigating factor that Defendant did not cause or threaten the victim with serious bodily injury.

The record shows that the trial court properly considered the victim's and Defendant's relationship, the time span of the undetected sexual activity, and the residual mental damage suffered by the victim. For approximately five years, while the victim was between the ages of eight and thirteen, Defendant, the victim's stepfather, had repeated anal, vaginal, and oral sex with the victim. In a victim impact statement, the victim stated that the sexual abuse had affected her relationship with her mother and that she "d[id]n't trust older men anymore." She also stated that she "felt depressed because [she] didn't know how [her] little sister would react when [she] tells her that her dad is in jail because of [the victim]." She also stated that the sexual abuse by Defendant "changed [her] childhood."

Because the trial court stated its reasons for ordering consecutive sentences, and those reasons are amply supported by the evidence, the trial court's decision is presumptively reasonable. Defendant has failed to show an abuse of discretion in imposing consecutive sentences, or that the aggregate sentence is greater than that deserved for the offenses for which he was convicted. Furthermore, the record shows that the trial court followed the principles and purposes of the Sentencing Act, and the record supports the trial court's findings. *See State v. William Douglas Zukowski*, No. M2001-02184-CCA-R3-CD, 2003 WL 213785, at *21 (Tenn. Crim. App., Jan. 31, 2003) *perm. app. denied* (Tenn., May 19, 2003) (consecutive sentences proper for five convictions of rape of a child resulting in an effective one-hundred twenty-five year sentence involving a handicapped victim, and the abuse occurred for two years); and *State v. Frank Crittenden*, No. M1998-00485-CCA-R3-CD, 1999 WL 1209517, at *4 (Tenn. Crim. App., Dec. 17, 1999) *perm. app. denied* (Tenn., June 5, 2000) (consecutive sentencing upheld resulting in an effective sentence of one-hundred years where the defendant was indicted on thirty-six counts of sexual abuse and pled guilty to eight counts of aggravated rape of his minor daughter occurring over a period of eight years). The record also supports the trial court's finding that Defendant abused his

position of private trust. The victim testified at trial that she thought of Defendant as a father-figure, and she called him "dad." We conclude that the trial court did not abuse its discretion in sentencing Defendant. Defendant is not entitled to relief on this issue.

CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE